IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ERIC B. WILLIAMS, SR.,

      Plaintiff,

v.                                CASE NO. 1:12-cv-115-GRJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

      Defendant.

_____/

## O R D E R

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act (the Act).  (Doc. 1.)   The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  (Docs. 7, 13, 14.)  The parties have consented to have the undersigned U.S. Magistrate Judge conduct all proceedings in this case. (Docs. 9, 10.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits under Title II and Title XVI of the Social Security Act on August

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this case.

12, 2008 alleging a disability due to bladder cancer, diabetes, and hypertension

beginning April 17, 2008. (R. 129-37.)  Plaintiff was 46 years old at the time of his

alleged onset of disability.  Plaintiff's applications were denied initially and upon

reconsideration.  (R. 73-79, 84-88.)  An administrative hearing was held before an

Administrative Law Judge ("ALJ") on July 8, 2010.  (R. 34-51.)  On August 17, 210, the

ALJ issued a written decision finding that Plaintiff was not disabled.  (R. 21-29.)  The

Appeals Council denied Plaintiff's request for review on April 11, 2012.  (R. 1-3.)

Plaintiff then filed his Complaint in this case on May 30, 2012.  (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more

than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against

the Commissioner's decision.[4] The district court must view the evidence as a whole,

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[10]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does

---

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[11]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to his cardiac impairment,

---

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

the summary of the record will focus on that impairment.

## A.    Medical Records

Plaintiff was treated at Shands at UF Clinic from January 10, 2007 to February

13, 2009.  On visits in October 2007, December 2007, and January 2008, Plaintiff

denied any chest pain.  (R. 220, 221, 223.)  On May 6, 2008, Plaintiff complained of

some chest pain, and was given a treadmill exercise test.  That test was stopped

because of Plaintiff's altered gait and right arm pain.  (R. 238.)  Notably, the treating

physician Dr. Ajay Mehta determined that Plaintiff's "chest pain is not likely cardiac in

origin," and recommended that if further pain developed, other treatments could be

considered.  (R. 241-42.)  On May 7, 2008, Plaintiff received myocardial perfusion

testing, and had an ejection fraction of 52%.  (R. 372.)  The physician's impression was

that this result was "normal," and Plaintiff's "prognosis [was] good."  (R. 372-73.)

Medical records from that same day disclose that Plaintiff had "a history of unstable

angina," but this statement appears only in Plaintiff's "history," not in the physician's

findings or impressions.  (R. 374.)  Plaintiff was discharged on May 8, 2008, and the

physician noted that his adenosine thallium test was "normal with a sum stress score of

zero," Plaintiff's EKG results were "unremarkable," and that an upper extremity Doppler

and CT scan did not show any evidence of deep venous thrombosis or thrombo-

embolic disease.  (R. 243.)  The physician further recommended that Plaintiff consume

a low-fat, low-salt, low-cholesterol diet, but placed no restriction on "bathing or

activities."  (R. 243.)  The treatment records of May 6-8, 2008 are the only medical

records in this record disclosing any treatment for any chest pain.  There are no other

records documenting a history of unstable angina or any treatment for this condition.

On August 25, 2008, Plaintiff was treated at Shands HealthCare for abdominal issues, but was "[n]egative for any chest pain or chest tightness." (R. 246.) Plaintiff similarly denied chest pain on a visit to UF Family Practice on November 21, 2008 and January 16, 2009, and at the Shands Emergency Department on December 26, 2008 and January 31, 2009. (R. 251, 387, 280, 276.)

## B. **Hearing Testimony**

At his administrative hearing, Plaintiff testified that he last worked in 2006 as a waterproof specialist. He described his current inability to work as due to stomach pain as a result of his surgery for bladder cancer. Plaintiff also testified that he experiences pain from the bag associated with his urinary stoma. He stated that he attempted to return to his waterpoof specialist position in 2007, but was unable to do so because he had not been "released" to work. (R. 45.) Plaintiff made no mention that he had been diagnosed with unstable angina, and he did not testify to any limitations related to that condition.

David Piue, a vocational expert, testified at the hearing that an individual with Plaintiff's RFC could not perform Plaintiff's past relevant work, but could perform the following occupations that existed in significant numbers in the regional and national economies: Gate Guard, Security Guard, and Deliverer/ Car Rental. (R. 48.)

## C. **Findings of the ALJ**

The ALJ found that the Plaintiff had the following severe impairments: urinary

stoma and degenerative joint disease.  The ALJ found that Plaintiff's kidney stones, diabetes mellitus, hypertension, and history of bladder cancer were non-severe impairments.  The ALJ found that Plaintiff's severe impairments did not meet or equal the listings.  The ALJ determined that Plaintiff's RFC was as follows:

> [T]he claimant has the residual functional capacity to perform light work with occasional lifting/ carrying 20 pounds, frequent lifting/ carrying 10 pounds; standing/ walking 6 hours in an 8-hour workday; and sitting 6 hours in an 8-hour workday; with occasional climbing, balancing, stooping, kneeling, crouching and crawling or bending from the waist.

(R. 24.)

The ALJ found that Plaintiff was unable to perform his past relevant work.  The ALJ found, relying on the testimony of a vocational expert ("VE"), that there were jobs that existed in substantial numbers in the national economy that Plaintiff could perform.  (R. 29.)  These jobs included Gate Guard, Security Guard, and Deliverer/ Car Rental.  (R. 29.)  Accordingly, the ALJ found that Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff raises one issue on appeal, whether the ALJ erred in failing to consider Plaintiff's unstable angina as a severe impairment at step two.  Plaintiff argues that as a result of this error, the ALJ failed to properly consider the combined effects of all of Plaintiff's impairments.  (Doc. 13.)  For the reasons discussed below, the Court concludes that the ALJ properly considered all of Plaintiff's impairments in making a finding that Plaintiff was not disabled.

## Severity of Impairments

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by not finding that Plaintiff's "unstable angina" was a severe impairment, in addition to urinary stoma and degenerative joint disease.

The Eleventh Circuit, as well as numerous other circuits, have held that step two of the sequential analysis may do no more than screen out de minimis claims.[22] An impairment or combination of impairments is severe at step two of the sequential evaluation if it significantly limits a clainant's physical or mental ability to do basic work activities.[23] To be considered "severe" a medical condition must constitute more than a "deviation from purely medical standards of bodily perfection or normality."[24]

The ALJ is not required to identify all of the impairments that should be considered severe. *See Heatly v. Commissioner of Social Sec.,* 382 F. App'x 823 (11th Cir. 2010) (finding harmless error where the ALJ determined the claimant's only severe impairment was status-post cervical fusion, despite a separate diagnosis of back pain). The only requirement at step two is to identify if any severe impairment exists. *Id.* ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). Here, the ALJ determined at step two that Plaintiff suffered from the severe impairments of urinary stoma and degenerative joint disease,

---

[22] Stratton v. Bowen, 827 F.2d 1447, 1453 (11th Cir. 1987); see also Anthony v. Sullivan, 954 F.2d 289, 294-95 (5th Cir. 1992); Bailey v. Sullivan, 885 F.2d 52, 56-57 (3rd Cir. 1989).

[23] 20 C.F.R. § 404.1520(c).

[24] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

a finding sufficient to satisfy step two.[25]

It is also clear that the ALJ considered all of Plaintiff's impairments in combination, having discussed in detail Plaintiff's testimony and medical history, which includes his complaints of stomach pain from his stoma, his history of treatment for diabetes and non-compliance with his medication, his complaint of chest pain in May 2008 and the ensuing normal test results, his treatment for kidney stones, and his complaints of pain in the shoulders and knees. The ALJ discussed Plaintiff's limitations due to these symptoms, and the diagnoses documented by his treating physicians.

With regard to Plaintiff's argument that the ALJ should have included "Plaintiff's heart problems" as a severe impairment at step two, the record does not evidence any medical documentation that Plaintiff's heart problems effected his ability to engage in basic work skills. As an initial matter – although dispositive of the issue – Plaintiff never listed unstable angina as a reason for seeking disability benefits in his initial applications. Moreover, he never even mentioned this condition during his testimony at the administrative hearing.

The medical records submitted to the ALJ do not evidence that Plaintiff was diagnosed with or treated for severe heart problems. Rather the medical records evidence that Plaintiff repeatedly denied any chest pain when treated by physicians in October 2007, December 2007, January 2008, August 2008, November 2008,

---

[25] <u>Jamison v. Bowen</u>, 814 F.2d 585, 588 (11th Cir. 1987)("[w]hether or not it [the impairment] qualifies as a disability and whether or not it results from a single severe impairment ... is enough to satisfy the requirement of step two."); <u>Maziarz v. Secretary of Health and Human Services</u>, 837 F.2d 240, 244 (6th Cir. 1987).

December 2008, and January 2009. (R. 220, 221, 223, 251, 387, 280, 276.) The medical records include only one incident in which Plaintiff complained of chest pain, in May 2008. Plaintiff's treating physician administered a treadmill exercise test, an upper extremity Doppler test, a CT scan, and an adenosine thallium test. The diagnosis and results of these tests were found to be "unremarkable" and "normal." (R. 243.) After examination and review of the test results Dr. Mehta concluded that Plaintiff's "chest pain is not likely cardiac in origin." (R. 241-42.) On May 7, 2008, Plaintiff received myocardial perfusion testing, and had an ejection fraction of 52%. (R. 372.) The physician's impression was that this result was "normal," and Plaintiff's "prognosis [was] good." (R. 372-73.) Other than Plaintiff's self reporting comment that he had a history of unstable angina there is no medical record evidence that Plaintiff was ever diagnosed by any medical professional with unstable angina, nor are there any treatment records evidencing that Plaintiff ever received treatment for this condition.

Accordingly, based upon this record the Court has no problem concluding that the ALJ did not err in his step two determination by not listing heart problems as a severe condition, and did not err by failing to consider Plaintiff's impairments in combination. The Court finds that the ALJ's determination is supported by substantial evidence, and therefore the decision of the Commissioner is due to be affirmed.

## V.  CONCLUSION

In light of the foregoing it is **ORDERED** that the decision of the Commissioner is

**AFFIRMED**. The Clerk is directed to enter final judgment and close the file.

      **DONE AND ORDERED** this 10th day of May 2013.

                            *s/ Gary R. Jones*

                            GARY R. JONES
                            United States Magistrate Judge